## UNITED STATES DISTRICT COURT
## DISTRICT OF MAINE

| | | |
|---|---|---|
| DONALD TRAFFORD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Docket No. 09-cv-44-P-S |
| | ) | |
| CITY OF WESTBROOK, | ) | |
| | ) | |
| Defendant. | ) | |

### ORDER ON MOTION FOR SUMMARY JUDGMENT

Firefighter Donald Trafford sued his employer, the City of Westbrook, alleging deprivations of his right to procedural due process in violation of the Maine and United States Constitutions and 42 U.S.C. § 1983.  He claims the City failed to provide adequate notice of the charges and evidence against him prior to a disciplinary hearing that resulted in his one-week suspension and demotion.  After he filed this suit, Trafford and the City submitted the propriety of his suspension and demotion to arbitration.  Trafford substantially prevailed.  Before the Court is Defendant's Motion for Summary Judgment (Docket # 15).  For the reasons explained below, the Court GRANTS IN PART, DENIES IN PART, and DISMISSES IN PART the Defendant's motion and DISMISSES WITH PREJUDICE Trafford's Complaint (Docket # 9-2).

## I.     BACKGROUND[1]

### A.      The Parties and the Union

The City employs Plaintiff Donald Trafford as a firefighter with the City's Fire and Rescue Department (the "Department").  (Def.'s SMF ¶ 1.)  He has been with the Department

---

[1] Facts followed by citations to Local Rule 56 statements are part of the summary judgment record.  (See Def.'s Statement of Material Facts (Docket # 16) ("Def.'s SMF"); Pl.'s Opposing Statement of Material Facts (Docket # 22) ("Pl.'s OSMF"); Pl.'s Additional Statement of Material Facts (Docket # 22) ("Pl.'s ASMF"); Def.'s Reply to Pl.'s ASMF (Docket # 25) ("Def.'s Reply SMF").)  Facts without citations are not part of the summary judgment record.  The Court includes them here simply to clarify otherwise obscure points.  In crafting this recital, the Court has resolved all factual disputes in Trafford's favor, provided the record supports his contentions.

since 1995 and was promoted to lieutenant in 2007.  (Def.'s SMF ¶ 2.)  Trafford is a member of Teamsters Local 340 (the "Union"), which is the firefighters' exclusive bargaining agent with the City.  (Def.'s SMF ¶ 3.)  Pursuant to a collective bargaining agreement between the Union and the City (the "CBA"), the City may suspend, demote, or terminate a firefighter only for just cause.  (Def.'s SMF ¶ 4.)

### B.      Complaint, Investigation, and Report

Lisa Theberge is employed by the City as a firefighter/paramedic and worked on the shift of which Trafford was the lieutenant.  On April 16, 2008, Theberge sent a letter to the City in which she complained that a hostile work environment had developed within the Department. The City retained a consultant, Michael Wing, to investigate Theberge's complaint.   The consultant reported the results of his investigation to the City in a written document, dated September 2008 (the "Wing Report").  Around the same time the City obtained the Wing Report, Theberge filed a formal notice of claim against the City pursuant to the Maine Tort Claims Act (the "Theberge Claim").   The Theberge Claim contains numerous specific allegations against Trafford.  (Pl.'s ASMF ¶ 4; Def.'s Reply SMF ¶ 4.)

The Wing Report also contains allegations against Trafford.  It indicates that Theberge alleged that Trafford called her a "dyke" on several occasions, once in the presence of an identified bystander.  (Pl.'s ASMF ¶¶ 12, 13; Def.'s Reply SMF ¶¶ 12, 13.)  It also states that Theberge claimed that Trafford was abusive to her when he once criticized her driving.  (Pl.'s ASMF ¶ 12; Def.'s Reply SMF ¶ 12.)  In addition, the Wing Report contains summaries of interviews with other firefighters.  One said that the atmosphere of Trafford's shift could be "good or very bad," and that Trafford "yells when he is angry and generally not [sic] a nice person."  (Pl.'s ASMF ¶¶ 16, 18; Def.'s Reply SMF ¶¶ 16, 18.)  Another said that Trafford called

people names, that he and an individual named Matt Lamontagne "were especially bad," and that the South Portland Fire Department would not tolerate the way Trafford's shift operates.  (Pl.'s ASMF ¶¶ 20, 22, 24; Def.'s Reply SMF ¶¶ 20, 22, 24.)

### C.    Notice, Hearing, and Discipline

On October 14, 2008, Trafford received a letter from Fire Chief Gary Littlefield.  (Pl.'s ASMF ¶ 2; Def.'s Reply SMF ¶ 2.)  Littlefield notified Trafford that he was going to recommend that the Mayor, Bruce Chuluda, suspend Trafford for a week without pay and demote him from lieutenant to firefighter.  (Pl.'s ASMF ¶ 2; Def.'s Reply SMF ¶ 2.)  Littlefield explained that his recommendation was based on vulgarity and inappropriate remarks and actions occurring on Trafford's shift.  (Pl.'s ASMF ¶ 8; Def.'s Reply SMF ¶ 8.)  Specifically, Littlefield wrote that Theberge had alleged that Trafford had called her a "dyke" three times in 2008.  (Pl.'s ASMF ¶ 9; Affidavit of Donald Trafford (Docket # 23) ("Trafford Aff.") at Ex. 1.)  Littlefield's letter contained no other specific references to vulgarity.  (Pl.'s ASMF ¶ 9; Trafford Aff. at Ex. 1.)  Littlefield enclosed with his letter a redacted version of the Wing Report.  (Pl.'s ASMF ¶ 3; Def.'s Reply SMF ¶ 3.)  This redacted version included those portions of the Wing Report relating to Trafford's actions and comments.  (Def.'s Reply SMF ¶ 9; Trafford Aff. at Ex. 1.)  Littlefield advised Trafford that a hearing regarding his possible demotion and suspension had been scheduled for the next day, October 15, 2008.  (Pl.'s OSMF ¶ 5.)

At the request of the Union, the hearing was postponed for two months and was convened on December 15, 2008.  (Pl.'s OSMF ¶ 5; Def.'s SMF ¶ 5.)  When the hearing commenced, all Trafford knew with respect to the charges and evidence against him was contained in Littlefield's letter and the redacted version of the Wing Report, which Littlefield had provided in conjunction with the letter.  (Pl.'s ASMF ¶ 3; Def.'s Reply SMF ¶ 3.)  Although Trafford knew

that the Theberge Claim existed, he had not seen it.  (Pl.'s ASMF ¶ 4; Def.'s Reply SMF ¶ 4.)

City Manager Jerre Bryant served as the hearing officer.  (Def.'s SMF ¶ 6; Pl.'s OSMF ¶ 6.)

During the hearing, Attorney Howard Reben, who appeared on Trafford's behalf, questioned

Bryant about the Theberge Claim and whether it contained specific allegations against Trafford.

Bryant said he read it once when it was filed, but immediately handed it off to legal counsel and

the insurance company.  (Pl.'s ASMF ¶ 5; Def.'s Reply SMF ¶ 5.)  He could not say one way or

the other whether it contained specific allegations against Trafford.  (Pl.'s ASMF ¶ 6; Def.'s

Reply SMF ¶ 6.)  Reben reminded Bryant that neither he nor Trafford had seen the Theberge

Claim, in spite of their request for a copy in advance of the hearing.  (Pl.'s ASMF ¶ 7.)  Reben

renewed this request during the hearing.  (Id.)  The City refused these requests on the ground that

the Theberge Claim was privileged and irrelevant to the disciplinary hearing.  (Def.'s Reply SMF

¶ 7.)  Arguing that the City's nondisclosure of the Theberge Claim deprived Trafford of his

constitutional right to know the charges against him, Reben moved to continue the hearing.

(Pl.'s ASMF ¶ 26.)  Bryant denied the motion.[2]

By the date of the hearing, Littlefield no longer worked for the City; he did not testify.

(Pl.'s ASMF ¶ 10; Def.'s Reply SMF ¶ 10.)  Reben therefore had to ask Bryant whether he could

---

[2] The City did not produce the Theberge Claim to Trafford until the Court ordered it to do so on July 31, 2009.
(Pl.'s ASMF ¶ 31.)  As it turns out, the Theberge Claim mentions Trafford twenty-three times and contains
allegations that specify who were involved in various events and when and where they occurred.  (Pl.'s ASMF ¶ 32.)
Perhaps because there is some overlap between the Wing Report and the Theberge Claim, Trafford suspects the City
based its decision to demote and suspend him on the allegations contained in the Theberge Claim.  The record
simply does not support this suspicion.  The hearing officer explicitly stated that he did not consider the Theberge
Claim to be evidence against Trafford.  Trafford attempts to cast doubt on the hearing officer's credibility by stating
that the hearing officer reviewed the Theberge Claim and "recalled that [it] contained numerous specific allegations
against Trafford."  (Pl.'s ASMF ¶ 6.)  The portion of the record Trafford cites in support of this fact discloses
something very different.  In response to Reben's question whether the Theberge Claim contains specific allegations
against Trafford, Bryant says:  "I cannot recall specific allegations about Lieutenant Trafford, but I would not—
certainly would not say there is not."  Although the Court "resolve[s] all reasonable inferences in favor of the non-
moving party" at summary judgment, it "must ignore conclusory allegations, improbable inferences, and
unsupported speculation."  Taylor v. Am. Chemistry Council, 576 F.3d 16, 24 (1st Cir. 2009) (internal quotation
omitted).  From the Court's perspective, Trafford's unreasonable and unsupported suspicion that the City based its
disciplinary decision on the Theberge Claim is one the Court must ignore.

4

specify what Littlefield meant in his October 14 letter when he referred to vulgarity and inappropriate remarks. (Pl.'s ASMF ¶ 11.) On two occasions, Bryant said he could not do so without referring to the hearing exhibits, which included the Wing Report. (Pl.'s ASMF ¶ 11.) Reben thus asked Bryant several questions about the Wing Report. With respect to reference in the Wing Report to Trafford's criticism of Theberge's driving, Bryant acknowledged that Trafford, as a lieutenant, had a responsibility to take corrective action if an employee acted inappropriately. (Pl.'s ASMF ¶ 15.) Bryant appeared to agree with Trafford that references in the Wing Report to Trafford's yelling and disposition as a not nice person were too general to allow a specific response. (Pl.'s ASMF ¶ 19.) Bryant also appeared to agree with Trafford that the statement that he and Lamontagne were "especially bad" was not a charge to which he could respond. (Pl.'s ASMF ¶ 21.) Similarly, Bryant agreed that the comment that the South Portland Fire Department would not tolerate the way Trafford's shift operated did not state a charge to which Trafford needed to respond. (Pl.'s ASMF ¶ 25.) Claiming that the Wing Report's lack of specificity deprived Trafford of an opportunity to respond to the charges against him, Reben again moved to continue the hearing. (Pl.'s ASMF ¶ 26.) Bryant denied the motion.

The hearing concluded in just over four hours. (Def.'s SMF ¶¶ 7, 8.) Eight days later, on December 23, the Mayor sent a letter demoting Trafford from lieutenant to firefighter and suspending him without pay for the week of December 28, 2008, through January 3, 2009. (Def.'s SMF ¶ 9.)

### D. Grievance, Arbitration, and Litigation

Trafford filed a grievance on December 31, claiming he had been disciplined unjustly. (Def.'s SMF ¶ 12.) The grievance procedure bore no fruit and on January 20, 2009, Trafford requested arbitration pursuant to the CBA. (Def.'s SMF ¶ 14.) An arbitration hearing was held

on March 24 and April 13, 2009.  (Def.'s SMF ¶ 17.)  The hearing lasted several hours.  (Def.'s SMF ¶ 18.)  The CBA "limits the authority of the arbitrator to the disposal of the precise issue submitted."  (Pl.'s ASMF ¶ 28.)  The parties in Trafford's case framed the issue as follows: "Was the discipline and demotion imposed on Donald Trafford by the City of Westbrook in accordance with the applicable collective bargaining agreement?  If not, what is an appropriate remedy?"  (Pl.'s ASMF ¶ 29.)  The arbitration panel announced its decision and award on June 11, 2009.  (Def.'s SMF ¶ 19.)  The panel granted Trafford's grievance in part, reinstating him as a lieutenant but extending the period of his suspension from one week to two.  (Def.'s SMF ¶ 20.)  Following the panel's award, the City compensated Trafford for erroneously demoting him by paying him the salary differential between the lieutenant and firefighter positions.  (Def.'s SMF ¶ 21.)

On the same day that he requested arbitration, Trafford filed this action.[3]  (Def.'s SMF ¶ 13.)  Trafford alleges that the City did not provide adequate notice or explanation of the charges against him prior to the hearing.  He says he was thereby deprived of an opportunity to respond to or defend himself against the proffered basis for the demotion and suspension.  Specifically, he says the City provided him only the Littlefield letter and the redacted Wing Report.  He alleges that he could not respond to or defend himself against the references to him in the Report because they were too vague.  In addition, he complains that although the hearing officer acknowledged having reviewed the Theberge Claim, the hearing officer refused to provide it to him.

---

[3] Trafford initially filed suit in Maine Superior Court (Cumberland County).  Asserting federal question jurisdiction, the City removed the action to this Court and promptly won dismissal with respect to the Mayor and Fire Chief, both of whom Trafford had sued in their official capacities.  The City moved to dismiss on the ground that it is redundant to sue a municipality and municipal officials in their official capacities.  The Court agreed.  (See Order on Mot. to Dismiss (Docket # 12).)

Trafford alleges in Count I that the City denied him due process in violation of 42 U.S.C. § 1983, the Fourteenth Amendment to the United States Constitution, and Article I, Section 6 of the Maine Constitution when it failed to provide him with notice of the charges against him prior to the hearing.  In Count II he contends the City denied him due process when the hearing officer refused to allow him to review the charges against him contained in the Theberge Claim. Trafford asks that the Court (1) order the City to reinstate him as a lieutenant; (2) order the City to expunge his record of any disciplinary actions; (3) order the City to make him whole by ordering back pay, such other benefits of which he has been deprived, and compensation for attorney's fees, interest, and costs; and, (4) order such other relief as the Court deems just and proper.

### E.    The City's Motion

Claiming an absence of factual disputes, the City has moved for summary judgment on the following grounds:  (1) Trafford's dispute with the City is moot; (2) the Complaint fails to state a claim; (3) Trafford's arbitration of his grievance amounted to a dismissal of his lawsuit; and (4) Trafford's suit is barred by claim and issue preclusion.  (See Def.'s Mot. for Summ. J. (Docket # 15) ("Def.'s Mot.").)  The City did not move for summary judgment on the merits. Indeed, its grounds for judgment effectively assume it is liable for violating Trafford's right to due process.

In a perplexing opposition, Trafford argues that the Court should deny the City's motion because genuine issues of fact exist with respect to whether the City is liable for violating Trafford's right to due process.  (See Pl.'s Mem. of Law in Opp'n to Def.'s Mot. for Summ. J. (Docket # 21) ("Pl.'s Opp'n") at 5-9.)  He also explains why the City's four arguments for summary judgment lack merit.  (See id. at 9-17.)

Then, appearing to forget that it did not move for summary judgment on the merits, the City replied that no genuine issue of fact exists with respect to whether the City is liable for violating Trafford's right to due process.   (See Reply to Pl.'s Opp'n (Docket # 26) ("Def.'s Reply") at 1-6.)

## II.   DISCUSSION

In the wake of the arbitration, precious little remains at stake in this controversy.   Yet, what remains at stake is constitutionally significant.   According to mootness doctrine, as applied in actions brought under 42 U.S.C. § 1983, Trafford's success in reversing the deprivation of which he complains does not render his constitutional claims moot.   The Court disposes of this threshold jurisdictional issue first.   Then, notwithstanding the City's failure to move directly for summary judgment on the merits of Trafford's claims, the Court determines the merits are properly before it for resolution.   The Court concludes that the City is entitled to judgment as a matter of law.   As a consequence, the Court dismisses as moot the City's alternative grounds for dismissal.

### A.   Mootness

#### 1.   Legal Standard

The Constitution confines the federal courts' jurisdiction to actual cases or controversies. U.S. CONST. art. III, § 2, cl. 1.   An actual case or controversy must exist "at each and every stage of the litigation."   Connectu LLC v. Zuckerberg, 522 F.3d 82, 88 (1st Cir. 2008).   Litigation becomes moot when an actual case or controversy ceases to exist because "the issues presented are no longer live or . . . the parties lack a legally cognizable interest in the outcome."   Overseas Military Sales Corp. v. Giralt-Armada, 503 F.3d 12, 17 (1st Cir. 2007) (internal quotation

omitted).  Once a case becomes moot dismissal is "compulsory."  Cruz v. Farquharson, 252 F.3d 530, 533 (1st Cir. 2001).

The First Circuit has observed that it is appropriate to consider mootness challenges as challenges to a court's subject-matter jurisdiction, and that "[t]he proper vehicle for challenging a court's subject-matter jurisdiction is Federal Rule of Civil Procedure 12(b)(1)."  Valentin v. Hosp. Bella Vista, 254 F.3d 358, 362-63 (1st Cir. 2001); see United Seniors Ass'n v. Philip Morris USA, 500 F.3d 19, 23 (1st Cir. 2007); accord Sheely v. MRI Radiology Network, P.A., 505 F.3d 1173, 1182 (11th Cir. 2007); St. John's United Church of Christ v. City of Chicago, 502 F.3d 616, 626 (7th Cir. 2007).  Here, the City has moved under Rule 56, not Rule 12(b)(1).  However, where the jurisdictional challenge is based on facts that

> are not intertwined with the merits of the plaintiff's claim, "the trial court may proceed as it never could under 12(b)(6) or [Federal Rule of Civil Procedure 56].  Because at issue in a factual 12(b)(1) motion is the trial court's jurisdiction[—]its very power to hear the case[—]there is substantial authority that the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case."

Torres-Negron v. J & N Records, LLC, 504 F.3d 151, 162-63 (1st Cir. 2007) (first alteration in original) (quoting Lawrence v. Dunbar, 919 F.2d 1525, 1529 (11th Cir. 1990)).  The extent of Trafford's remaining interest in the outcome of this litigation has nothing to do with his procedural due process claims.  In other words, the City's mootness challenge is not based on facts that are intertwined with the merits.  The Court therefore construes the City's mootness challenge as a Rule 12(b)(1) motion to dismiss and proceeds, under Torres-Negron, to determine whether the outcome of the arbitration rendered Trafford's claims moot.

### 2.    Analysis

In his Complaint, filed January 20, 2009, Trafford alleges that the City violated his constitutional right to procedural due process.  He seeks reinstatement, expungement, back pay,

attorney's fees, interest, costs, "such other benefits as he has been deprived," and "such other relief as the Court deems just and proper." (Compl. at 4.)

After the arbitration panel announced its decision and award on June 11, 2009—in which it ordered Trafford's reinstatement to lieutenant and extended his suspension from one week to two—the City paid him the "differential between the lieutenant's position and his demoted position so that he has lost no pay as a result of any discipline imposed pay differential." (Def.'s SMF ¶ 21.) Although Trafford denies this fact, his denial is actually a qualification:

> 21. Denied. Trafford was suspended without pay for one week and lost significant overtime pay during the two month period that he was on administrative leave prior to his disciplinary hearing. The arbitrator restored Trafford to the rank of lieutenant but extended his suspension without pay from one week to two. The arbitrator did not restore any of the overtime pay that Trafford lost during the two months he was on administrative leave pending his disciplinary hearing and ineligible for overtime, nor did the arbitrator award compensatory damages.

(Pl.'s OSMF ¶ 21.) Trafford does not deny that the City has paid him the difference between the lieutenant and demoted positions (i.e., back pay). Because this fact is properly supported by citation to the record, the Court deems it admitted. See D. Me. Loc. R. 56(f). Furthermore, Trafford admits that the arbitral panel reinstated him to his position as a lieutenant. Trafford's claims are therefore moot with respect to reinstatement and back pay.

All that remains are his demands for expungement, attorney's fees, interest, costs, "such other benefits as he has been deprived," and "such other relief as the Court deems just and proper." That some of these demands are powerless to save Trafford's claims from dismissal is clear. The prospect of winning a fee award does not save moot claims from dismissal. See Lewis v. Cont'l Bank Corp., 494 U.S. 472, 480, 110 S. Ct. 1249, 108 L. Ed. 2d 400 (1990); Goodwin v. C.N.J., Inc., 436 F.3d 44, 51 (1st Cir. 2006). The same is true for litigation costs. See Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 107, 118 S. Ct. 1003, 140 L. Ed. 2d 210

(1998).  Whether any of his remaining demands are availing is somewhat murky.  The First Circuit has held that a demand for expungement may suffice, see Matos v. Clinton Sch. Dist., 367 F.3d 68, 72-73 (1st Cir. 2004), but this is not always the case, see Arnold v. Panora, 593 F.2d 161, 163-64 (1st Cir. 1979).  The result appears to turn on the collateral consequences flowing from the record to be expunged.[4]

Further, it is possible that Trafford may win an award of nominal damages for the alleged unconstitutional deprivation, notwithstanding that the City has already compensated him for his actual injury.  See Carey v. Piphus, 435 U.S. 247, 266-67, 98 S. Ct. 1042, 55 L. Ed. 2d 252 (1978).  Indeed, the Supreme Court has remarked that "Carey obligates a court to award nominal damages when a plaintiff establishes the violation of his right to procedural due process but cannot prove actual injury."  Farrar v. Hobby, 506 U.S. 103, 112, 113 S. Ct. 566, 121 L. Ed. 2d 494 (1992); see Azimi v. Jordan's Meats, Inc., 456 F.3d 228, 239 (1st Cir. 2006).  Consequently, several courts have held that a § 1983 plaintiff's possible entitlement to nominal damages will prevent dismissal of otherwise moot claims.  See Utah Animal Rights Coal. v. Salt Lake City Corp., 371 F.3d 1248, 1272 n.2 (10th Cir. 2004) (Henry, J., concurring) (collecting cases); but see Arizonans for Official English v. Arizona, 520 U.S. 43, 70, 117 S. Ct. 1055, 137 L. Ed. 2d 170 (1997) (cautioning that "a claim for nominal damages, extracted late in the day from [a § 1983 plaintiff's] general prayer for relief and asserted solely to avoid otherwise certain mootness, bore close inspection").

In the absence of any briefing whatsoever on expungement and nominal damages, the Court is reluctant to conclude that Trafford lacks any legally cognizable interest in the outcome of this litigation.  The Court therefore determines, based on Trafford's demand for expungement

---

[4] Neither party has taken a position with respect to the Article III significance of Trafford's personnel records.  The Court is thus ill-prepared to determine the extent and nature of what collateral consequences, if any, flow from an indication in those records that he was demoted and reinstated.

and his potential recovery of nominal damages, that the arbitral panel's June 2009 award and the City's response to it did not moot his procedural due process claims.[5]  See Parella v. Ret. Bd. of the R.I. Employees' Ret. Sys., 173 F.3d 46, 57 (1st Cir. 1999) (noting that the "possibility of even a partial remedy is sufficient to prevent a case from being moot").  Satisfied of its jurisdiction, the Court addresses the City's remaining grounds for summary judgment.

**B.      Dismissal for Failure to State a Claim**

The City argues that Trafford's Complaint "should be dismissed because it fails to state a claim."  (Def.'s Mot. at 5.)  Specifically, the City points to Trafford's allegation that it denied him "'due process at a hearing in which he was faced with the potential loss of a property interest.'"[6]  (Id. at 6 (quoting Compl. ¶ 14 (emphasis in original)).)  The City contends that Trafford fails to allege harm and that his allegations of potential harm are insufficient.  It goes on to say that by failing to allege that he has sustained some direct injury, Trafford has failed to satisfy the case or controversy requirement of Article III.  (See Def.'s Mot. at 6.)  Without citing any particular rule, the City concludes that the Complaint should be dismissed for this reason.

The Court readily admits it is uncertain what legal standard applies to this portion of the City's motion and what the Court may consider in resolving it.  One alternative would be to proceed as above and construe this portion of the City's motion as one to dismiss for lack of subject matter jurisdiction because it raises Article III concerns.  Another alternative would be to construe it as a motion pursuant to Federal Rule of Civil Procedure 12(b)(6), from which the City borrows the familiar phrase, "fail[s] to state a claim."  See Fed. R. Civ. P. 12(b)(6).  Were the Court to chart this course, it would accept as true all well-pleaded factual allegations in the Complaint and draw all reasonable inferences in Trafford's favor.  See Gargano v. Liberty Int'l

---

[5] Given this conclusion, the Court need not discuss Trafford's contention that he has a live claim for overtime pay.
[6] In both Counts I and II Trafford describes the disciplinary hearing as one in which he "was faced with the potential loss of a property interest."  (Compl. ¶¶ 14, 16.)

Underwriters, Inc., 572 F.3d 45, 48 (1st Cir. 2009).  Dismissal would result if the Court determined that the Complaint did not "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  Ashcroft v. Iqbal, __ U.S. __, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (internal quotation omitted).  The last alternative, which the Court effectively chooses, is to construe it as a motion for summary judgment on the merits of Trafford's claims pursuant to Federal Rule of Civil Procedure 56.[7]

The Court need not consider at length the Rule 12(b)(1) alternative.  The City's sole focus is on Trafford's description of the disciplinary hearing as one "in which he was faced with the potential loss of a property interest."  The City neglects Trafford's immediately preceding allegation that its "failure to provide [him] with notice of the charges against him prior to hearing violated both the United States and Maine Constitutions . . . and 42 U.S.C. § 1983 by denying [him] due process."  (Compl. ¶ 14.)  Taken in context, the description of the hearing as one in which Trafford stood to lose a property interest is nothing more than a description of the hearing—it is not an allegation of future harm.  By alleging that the City violated his constitutional right to due process, Trafford sufficiently pleaded actual harm and satisfied the jurisdictional requirements of Article III.  See SBT Holdings, LLC v. Town of Westminster, 547 F.3d 28, 37 (1st Cir. 2008) (enumerating the requirements for Article III standing).

### 1.     Rule 12(d) Conversion

The Court addresses the second and third alternatives simultaneously.  Ordinarily, a court analyzes a motion to dismiss for failure to state a claim using the elements of the plaintiff's claim

---

[7] The difference between the alternatives is not academic.  See Muirhead v. Mecham, 427 F.3d 14, 16 (1st Cir. 2005) (vacating a Rule 12(b)(6) dismissal and ordering a Rule 12(b)(1) dismissal without prejudice); compare AVX Corp. v. Cabot Corp., 424 F.3d 28, 30-33 (1st Cir. 2005) (noting that dismissal for failure to state a claim "is treated as a dismissal on the merits" and, if all claims in an action are so dismissed, the dismissal likely will have preclusive effect), with Coors Brewing Co. v. Mendez-Torres, 562 F.3d 3, 8 (1st Cir. 2009) ("A dismissal for lack of subject matter jurisdiction does not trigger claim preclusion.").

as a guide.  See Iqbal, 129 S. Ct. at 1947.  "To establish a procedural due process claim under §
1983, a plaintiff must allege that [he] was deprived of a property interest by defendants acting
under color of state law and without the availability of a constitutionally adequate process."
Maymi v. P.R. Ports Auth., 515 F.3d 20, 29 (1st Cir. 2008).  The same is true under Maine law.
See DaimlerChrysler Corp. v. Executive Dir., Me. Revenue Servs., 2007 ME 62, ¶ 26, 922 A.2d
465, 473; Northrup v. Poling, 2000 ME 199, ¶ 9 n.5, 761 A.2d 872, 875.  The City argues that
Trafford "alleges due process deficiencies" but "nowhere indicates any harm to [himself] as a
result of those alleged deficiencies."  (Def.'s Mot. at 5-6.)  Except for the allegation that the City
violated his constitutional right to due process, the City is correct.

Surprisingly, Trafford does not allege anywhere in the Complaint that the City actually
suspended and demoted him.  He thus does not squarely allege that he "was deprived of a
property interest by defendants acting under color of state law."  Maymi, 515 F. 3d at 29.  What
he does allege is that the City violated his constitutional right to due process.  However,
"[p]roperty interests are 'created and . . . defined by existing rules or understandings that stem
from an independent source such as state law.'"  Hatfield-Bermudez v. Aldanondo-Rivera, 496
F.3d 51, 59 (1st Cir. 2007) (alteration in original) (quoting Bd. of Regents v. Roth, 408 U.S. 564,
577, 92 S. Ct. 2701, 33 L. Ed. 2d 548 (1972)).  His allegation of a constitutional violation is
therefore insufficient.  See Roth, 408 U.S. at 577 ("Property interests, of course, are not created
by the Constitution.").  Trafford makes up for this fatal shortcoming by offering the following in
response to the City's argument:

> When the complaint was filed, Trafford's loss was more than potential, it was
> already complete.  Trafford was suspended and demoted on 12/23/08 and the
> complaint was drafted on 1/15/09 and the action docketed on 1/20/09.  DSMF ¶¶
> 9, 13; Complaint at p 4.  If the court draws any inference from Trafford's use of
> the word "potential," it should be that the City would actually consider what he

had to say at the hearing before deciding whether to proceed with the proposed discipline.  The complaint should not be dismissed for failure to allege harm.

Pl.'s Opp'n at 11.  Trafford thus refers to the City's statement of material facts for the allegation that he was suspended and demoted on December 23, 2008 (i.e., deprived of a property interest). (See Def.'s SMF ¶ 9 ("On December 23, 2008 the Mayor sent a letter disciplining Trafford.").) This allegation is essential to his claims.  Without it, he fails to "state a claim to relief that is plausible on its face."  Iqbal, 129 S. Ct. at 1949.

There are procedural consequences to Trafford's reference to matters outside his Complaint in opposition to the City's Rule 12(b)(6) motion.  "Under Rule 12(b)(6), the district court may properly consider only facts and documents that are part of or incorporated into the complaint; if matters outside the pleadings are considered, the motion must be decided under the more stringent standards applicable to a Rule 56 motion for summary judgment."  Trans-Spec Truck Serv., Inc. v. Caterpillar, Inc., 524 F.3d 315, 321 (1st Cir. 2008); see also Fed. R. Civ. P. 12(d) ("If, on a motion under Rule 12(b)(6) . . . , matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56.").  The Court may consider the extraneous material and convert a motion to dismiss to one for summary judgment so long as it gives the parties "'a reasonable opportunity to present all the material that is pertinent to the motion.'"  Rivera v. Centro Medico de Turabo, Inc., 575 F.3d 10, 15 (1st Cir. 2009) (quoting Fed. R. Civ. P. 12(d)).

All necessary events under Rule 12(d) have occurred.  The Court is considering the City's motion as one under Rule 12(b)(6).  Trafford has referred to matters outside the pleadings. The Court has not excluded those matters but rather has been asked to consider them.  The parties have had ample opportunities to present pertinent material.  Indeed, they have both

approached the City's motion as one for summary judgment from the outset; it is, therefore, a perfect candidate for conversion under Rule 12(d).

### 2.     Summary Judgment Standard

Upon conversion, the City must do more than demonstrate merely that Trafford's Complaint fails to state a claim.  It must "demonstrate, in accordance with the requirements of Rule 56, that there exists no genuine issue as to any material fact and that . . . [it] is entitled to the entry of a judgment as a matter of law."  5C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1366, at 203 (3d ed. 2004); see Fed. R. Civ. P. 56(c); Afanador v. U.S. Postal Serv., 787 F. Supp. 261, 268 (D.P.R. 1991), aff'd, No. 92-1238, 1992 U.S. App. LEXIS 30071 (1st Cir. Sept. 17, 1992).

As the movant, the City "'bears the initial responsibility of . . . identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact.'" DeNovellis v. Shalala, 124 F.3d 298, 306 (1st Cir. 1997) (second alteration in original) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)).  "A 'genuine' issue is one that could be resolved in favor of either party, and a 'material fact' is one that has the potential of affecting the outcome of the case."  Sensing v. Outback Steakhouse of Fla., LLC, 575 F.3d 145, 152 (1st Cir. 2009) (internal quotation omitted).  If the City succeeds in this initial showing, Trafford must come forward and "set forth specific facts showing that there is a genuine issue of material fact as to each issue upon which he would bear the ultimate burden of proof at trial."  DeNovellis, 124 F.3d at 306 (internal quotation omitted).  In determining whether a genuine issue of material fact exists, the Court construes the record in the light most favorable to Trafford, the non-movant.  See Santoni v. Potter, 369 F.3d 594, 598 (1st Cir. 2004).

### 3.     Judgment as a Matter of Law

As an initial matter, it is important to note that Trafford may not argue that the City's substantive decision to discipline him was unsupported by just cause or otherwise unfairly based on insubstantial evidence. He submitted these claims to the arbitral panel. He cannot raise them here. See Wolf v. Gruntal & Co., 45 F.3d 524, 528 (1st Cir. 1995) ("Final arbitral awards are entitled to the same preclusive effect as state court judgments, at least as concerns claims and issues actually raised."). Mindful of this constraint, the Court proceeds to the merits of Trafford's due process claims. The parties agree that Trafford had a constitutionally cognizable property interest in his continued position as a lieutenant, and that the only legal issue is whether he was deprived of that interest without due process of law. The First Circuit very recently explained, in the context of complete termination of employment, what process is due a government employee like Trafford:

> The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner. The Supreme Court has stated that the pretermination hearing need not definitively resolve the propriety of the discharge, but need only be an initial check against mistaken decisions— essentially, a determination of whether there are reasonable grounds to believe that the charges against the employee are true and support the proposed action. This pre-termination process, especially when there is a comprehensive post-termination procedure in place, need not be elaborate. It need only include oral or written notice of the charges, an explanation of the employer's evidence, and an opportunity for the employee to tell his side of the story.

Calderon-Garnier v. Rodriguez, 578 F.3d 33, 38 (1st Cir. 2009) (citations and internal quotations omitted). The Court is satisfied that there are no genuine issues of material fact with respect to whether the City afforded Trafford all the process he was due. Trafford does not dispute that he received a letter from Chief Littlefield notifying him that the Chief was going to recommend that the City demote and suspend him. He does not dispute that Littlefield explained that his recommendation was based on Trafford's and others' vulgarity and inappropriate remarks and actions occurring on Trafford's shift. He does not dispute that Littlefield enclosed those portions

of the Wing Report that related to his actions and comments.  He does not dispute that a four-hour disciplinary hearing was convened two months after he received Littlefield's letter.  He does not dispute that he was represented at the hearing by Attorney Reben, who vigorously questioned the hearing officer about the Wing Report.  Generally speaking, he does not contend that he was given no opportunity to tell his side of the story.

Under these circumstances, Trafford's reliance on Collins v. Marina-Martinez, 894 F.2d 474 (1st Cir. 1990), and Cotnoir v. University of Maine Systems, 35 F.3d 6 (1st Cir. 1994), is misplaced.  In Collins, the First Circuit upheld an award of money damages in favor a tenured professor who, immediately before being called before a Committee that soon thereafter revoked his tenure,

> had no prior inkling of what type of information would be requested of him.  No specification of charges was furnished.  He had no documents available to him.  His interview lasted for 30 minutes.  He was not given a chance to appear again.  The ax fell six days later.  The university's "evidence" against [the professor] was not seasonably disclosed to him; indeed, he never saw the Committee's report until after he started suit.

Collins, 894 F.2d at 480-81.  Trafford's case could not be more different.  He knew for two months that he was in jeopardy of suspension and demotion.  He knew that Littlefield had recommended these disciplinary measures because, among other things, Theberge had alleged that he had called her a "dyke" on three occasions.  He also knew that Littlefield had determined that Trafford had both allowed and participated in vulgar discussions and actions while at work.  Furthermore, Trafford was given a version of the Wing Report that contained the factual allegations on which Littlefield had based his recommendation.  Collins is of no assistance to Trafford.

Similarly, in Cotnoir, the First Circuit affirmed a denial of qualified immunity for individual defendants who terminated a tenured professor because (1) they had not informed the

professor that they were contemplating his termination based on alleged academic and administrative improprieties, and (2) they had not explained to the professor the evidence against him.  See Cotnoir, 35 F.3d at 11.  The court determined that the defendants denied the professor a meaningful opportunity to contest his termination because they failed to tell him they were considering his termination.  Id. at 12.  The court further determined that the defendants denied the professor an opportunity to defend himself because they never provided him with an explanation of their evidence against him.  Id.  Significantly, like the evidence against Trafford, the evidence against the professor was contained in a report of an investigation.  The First Circuit explained the professor's predicament as follows:

> During the course of his investigation, [the Provost] met with [the professor], as well as a number of [the professor's] colleagues and people who were otherwise involved, to determine precisely what had occurred.  [The Provost] summarized his investigation in the report which he submitted to [the President].  [The President], however, never showed the report to [the professor]; nor did anyone else.  No one ever informed [the professor] of the substance of [the Provost's] interviews with his colleagues.  Nor did anyone otherwise tell [the professor] what in essence the evidence against him was.  Therefore, [the professor] had no way to know what the extent of the evidence was, what his alleged role in the whole scheme was, and the seriousness with which the [University] viewed the incident.  [The professor] therefore did not have an opportunity to respond to, or defend himself against the evidence presented.

Cotnoir, 35 F.3d at 12.

Again, Trafford's case is drastically different.  Littlefield gave him the relevant portions of the Wing Report, which he was told formed the evidence against him.  He had two months to examine this evidence and prepare a defense.  Then, with full knowledge of the evidence and charges against him, and with the assistance of Attorney Reben, he was given four hours in which tell his side of the story.  He may have believed the evidence was vague.  He may have convinced the hearing officer this was partially the case.  He may have felt that it would be unfair for the City to discipline him on the basis of this evidence.  These feelings may have been

19

especially acute given Littlefield's absence at the disciplinary hearing.  Finally, he may have been able to convince the arbitral panel that the City's evidence could not support the sanction it decided to impose.  Trafford has failed, however, to explain how these facts are material to the procedural due process inquiry.  Arguably they are material to the propriety of the City's disciplinary decision; but, as previously noted, Trafford is precluded from raising such matters in this proceeding.  The Court therefore concludes that Trafford has failed to point to specific facts that cause the Court to doubt that he had a meaningful opportunity to participate in the disciplinary hearing.  The City is entitled to judgment as a matter of law on Trafford's procedural due process claims.

### C.  Discontinuance by Arbitration and Claim and Issue Preclusion

Relying on a handful of aged cases,[8] the City argues that Trafford's voluntary submission of his grievance to arbitration amounted to a dismissal and that the Court must therefore dismiss the Complaint.  Elsewhere, the City contends that Trafford's claims are barred by claim or issue preclusion, or both.  The First Circuit has clarified that "[a]n agreement to arbitrate does not divest a court of its jurisdiction."  Skirchak v. Dynamics Research Corp., 508 F.3d 49, 56 (1st Cir. 2007).  Neither party cites any provision of law to the contrary.  Similarly, "[p]reclusion . . . is not a jurisdictional matter."  Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 293, 125 S. Ct. 1517, 161 L. Ed. 2d 454 (2005).  Accordingly, the Court need not reach these remaining issues.

## IV.  CONCLUSION

For the foregoing reasons, the Court ORDERS as follows:

---

[8] E.g., Campbell v. Campbell, 44 App. D.C. 142 (1915); Gunter v. Sanchez, 1 Cal. 45 (1850); Mooers v. Allen, 35 Me. 276 (1853); McNulty v. Solley, 95 N.Y. 242 (1884); Eddings v. Gillespie, 59 Tenn. (12 Heisk.) 548 (1873).

1. The Court DENIES Defendant's Motion for Summary Judgment (Docket # 15) to the extent Defendant moves to dismiss Trafford's Complaint because it is moot;

2. The Court DISMISSES AS MOOT Defendant's Motion to the extent Defendant moves to dismiss Trafford's Complaint because (a) Trafford's submission of his grievance to arbitration amounted to a voluntary dismissal, and (b) Trafford's claims are barred by claim and/or issue preclusion;

3. The Court GRANTS the remainder of Defendant's Motion because Defendant has demonstrated, in accordance with the requirements of Federal Rule of Civil Procedure 56, that there exists no genuine issue as to any material fact and that Defendant is entitled to judgment as a matter of law; and

4. The Court DISMISSES WITH PREJUDICE Plaintiff's Complaint (Docket # 9-2).

SO ORDERED.

　　　　　　　　　　　　　　　　　　/s/ George Z. Singal
　　　　　　　　　　　　　　　　　　United States District Judge

Dated this 12th day of November, 2009.

21